# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 20, 2010

No. 09-51045
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANDRES AGUIRRE JAIMES,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:09-CR-50-1

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Andres Aguirre Jaimes appeals his jury trial conviction of possession of firearms in furtherance of a drug trafficking crime, namely, distributing powder cocaine, in violation of 18 U.S.C. § 924(c)(1)(A). Jaimes argues that the Government failed to prove he possessed the firearms in furtherance of the drug trafficking crime.

Because Jaimes preserved his challenge to the sufficiency of the evidence, we review the sufficiency of the evidence de novo. *See United States v. Mitchell*,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

484 F.3d 762, 768 (5th Cir. 2007). We will uphold the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. *See United States v. Rose*, 587 F.3d 695, 702 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1915 (2010). Moreover, we determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence. *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).

We have set forth a non-exhaustive list of factors to determine whether possession of a firearm furthers, advances, or helps forward a drug trafficking offense, which includes (1) the type of drug activity, (2) the type of firearm, (3) the accessibility of the firearm, (4) the proximity of the firearm to drugs or drug profits, (5) whether the firearm was loaded, (6) whether the firearm was stolen, (7) whether the firearm was possessed legally or illegally, and (8) the time and circumstances under which the firearm was found. *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir.), *amended in part on other grounds*, 226 F.3d 651 (5th Cir. 2000). Jaimes disputes that his possession of the firearms was "in furtherance of" his cocaine trafficking activities. He contends that he did not possess the ammunition necessary to operate the firearms listed in the indictment against him, that he did not carry or display the firearms during the cocaine transactions, and that he did not barter guns for drugs. Even if all of Jaimes's contentions are true, they are not enough to establish that the evidence was insufficient as a matter of law to convict him of possessing a firearm in furtherance of a drug trafficking offense.

Jaimes admitted that he engaged in a drug trafficking offense when he distributed powder cocaine. There was testimony regarding the dangerous nature of drug trafficking, including testimony that one of Jaimes's cocaine

suppliers had been murdered when someone threw a hand grenade into his car. Jaimes possessed three different firearms—a handgun, a revolver, and an assault-style shotgun—all of which were located in Jaimes's bedroom closet. Thus, the firearms were readily accessible to Jaimes. The firearms were located in close proximity to a bag containing 140 grams of cocaine, other cocaine stashes, cocaine packing materials, a box of .25 caliber auto shells, ammunition for a Luger 9mm pistol, a BB gun with ammunition, digital scales, currency, and drug ledgers, found in Jaimes's bedroom, bedroom closet, and hall closet. There was testimony that drug traffickers commonly possess firearms for purposes of protection, security, and intimidation and that drug traffickers frequently conceal their firearms during drug transactions. There was also testimony that law enforcement officers frequently recover mismatched firearms and ammunition because of the nature of the drug trafficking industry, which often involves bartering guns for drugs.

"The fact that a firearm is 'unloaded' or 'inoperable' does not insulate the defendant from the reach of section 924(c)." *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir. 1989). "As the Supreme Court has recognized, an unloaded firearm is a dangerous weapon capable of provoking a violent response." *Id.* (citing *McLaughlin v. United States*, 476 U.S. 16, 18 (1986)).

The jury was free to choose among any reasonable construction of the evidence. *See Mitchell*, 484 F.3d at 768. Moreover, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* The foregoing evidence forms a sufficient basis for a rational juror to conclude that Jaimes possessed firearms in furtherance of cocaine trafficking. *See Ceballos-Torres*, 218 F.3d at 415.

The district court's judgment is AFFIRMED.